IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| SAIKEEN DIXON | : | NO. 23-209-2 |

**MEMORANDUM**

On June 11, 2025, a jury found Defendant Saikeen Dixon, along with his co-defendant Ronald Byrd, guilty of carjacking and aiding and abetting, in violation of 18 U.S.C. §§ 2119 and 2 (Count 2) as well as using, carrying, or brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 3). Dixon was found not guilty of attempted possession with intent to distribute 5 kilograms or more of cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 18 U.S.C. § 2 (Count 1). Dixon now moves for a new trial on Counts 2 and 3 pursuant to Federal Rule of Criminal Procedure 33, arguing that the verdict is against the weight of the evidence and shocks the conscience. For the following reasons, the Motion is denied.

**I.    LEGAL STANDARD**

Rule 33 authorizes the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). District courts have broad discretion in deciding whether a new trial is warranted under this standard. See United States v. Noel, 905 F.3d 258, 270 & n.7 (3d Cir. 2018) (citations omitted). The defendant bears the burden of proving that a new trial should be granted. See United States v. MacInnes, 23 F. Supp. 3d 536, 541 (E.D. Pa. 2014)

(citation omitted), aff'd sub nom. United States v. Keszey, 643 F. App'x 153 (3d Cir. 2016).

Where a Rule 33 motion is premised on the verdict being against the weight of the evidence, the Court "does not view the evidence favorably to the Government but instead exercises its own judgment in assessing the Government's case." United States v. Silveus, 542 F.3d 993, 1004 (3d Cir. 2008) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)); United States v. David, 222 F. App'x 210, 216 (3d Cir. 2007) (noting the district court's "duty to independently weigh the evidence" on a Rule 33 motion). However, even if the Court concludes that the verdict is against the weight of the evidence, "it can grant a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted.'" United States v. Thomas, No. 21-1610, 2023 WL 119463, at *4 (3d Cir. Jan. 6, 2023) (quoting Silveus, 542 F.3d at 1004-05); see also United States v. Ponton, 337 F. App'x 179, 181 (3d Cir. 2009) ("[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." (alteration in original) (quotation omitted)). Rule 33 motions based on the weight of the evidence are "not favored and should be 'granted sparingly and only in exceptional cases.'" Silveus, 542 F.3d at 1005 (quoting Gov't of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)).

II. DISCUSSION

Dixon argues that the verdict again him on Counts 2 and 3 is against the weight of the evidence and shocks the conscience because: (1) the jury relied on contradictory testimony by Government witness P.A.; (2) the jury disregarded evidence that the Government's investigation was biased and flawed; and (3) the split verdict, acquitting Dixon on Count 1 while convicting him on Counts 2 and 3, was irreconcilable with the evidence.

To prove Dixon guilty of aiding and abetting the crimes of carjacking (Count 2) and use of a firearm during a crime of violence (Count 3), the Government had to prove beyond a reasonable doubt that: (1) the principal, Byrd, committed the substantive crimes of carjacking and use of a firearm during a crime of violence; and (2) Dixon knew of the commission of those offenses and acted with intent to facilitate them.  See United States v. Stevens, 70 F.4th 653, 661 (3d Cir. 2023) (quotation and emphasis omitted). A.

Testimony of P.A.

Dixon first contends that the evidence weighs against his involvement in the carjacking, and that to find him guilty, the jury had to credit unreliable testimony by Government witness and informant P.A.  P.A. testified at trial that during an April 5, 2023 proffer session with police, he was shown a still from surveillance footage of the carjacking and identified Byrd's accomplice as Dixon, a long-time acquaintance.  However, P.A. also testified that he did not recognize the accomplice on the day of the crime, despite speaking to Byrd through the passenger-side window of a car the accomplice was driving.  Dixon maintains that it is incredible that P.A., who claimed to have known Dixon for years, could fail to recognize him at close range on the day of the carjacking, yet identify him in a grainy image with most of his face covered by a balaclava months later.  He argues that the jury's reliance on this flawed testimony, in the absence of other evidence of his involvement, undermines the verdict and shocks the conscience, necessitating a new trial.

Upon independent evaluation, we cannot conclude that the evidence, including P.A.'s account and corroborating evidence, weighs against the jury's finding that Dixon was the accomplice.  Dixon's core contention—that P.A.'s identification of Dixon in the photograph is irreconcilable with his failure to recognize him at the scene—is a fallacy.  P.A. testified at trial that he wasn't paying attention to the driver on the day of the crime, his focus being drawn to Byrd in

3

the passenger seat, who was speaking with him and holding a gun. True, the jury heard that P.A. told investigators at one point that he'd never seen the driver before, but the overwhelming thrust of his testimony at trial and in all previous statements was that he simply wasn't paying attention. There is nothing inherently contradictory about P.A. failing to recognize Dixon under those circumstances, yet recognizing him in the surveillance still based on their prior acquaintance. Similarly, crediting that P.A. had known Dixon on at least a casual basis for years, it is believable that he could recognize him in the surveillance still despite pixelation and the balaclava. There is notably no evidence that investigators (or anyone else) influenced P.A. to name Dixon or that Dixon was even a suspect prior to P.A.'s identification.

There was also independent evidence that corroborated P.A.'s testimony and substantiated Dixon's involvement, including: calls, text messages, and cell site data reflecting P.A.'s contacts with Byrd; records of Byrd and Dixon's extensive communications; the text message Byrd sent with his location to Dixon just before the carjacking; cell site data evidencing Byrd's and Dixon's general locations before and after the carjacking; recorded jail calls between Dixon and Byrd and Dixon and an associate named Pop discussing Byrd's arrest; and photographs of a scar on Dixon's arm that appeared to be visible in the surveillance footage. Thus, neither the weight of the evidence with respect to Dixon's involvement nor the jury's potential reliance on P.A.'s testimony constitutes a miscarriage of justice that would warrant a new trial.

B. *Brady* Evidence & Flawed Investigation

Dixon next argues that a new trial should be granted based on the Government's late disclosure of exculpatory police notes pursuant to Brady v. Maryland, 373 U.S. 83 (1963), as well as other evidence that he contends revealed bias and carelessness in the underlying investigation. On May 30, 2025, just days before trial and pursuant to a court order, the Government produced

notes by Detective Andrew Gallagher indicating that during a taped interview, P.A. named Pop as the driver with Byrd, not Dixon. The information provided pursuant to the Court's order was not new. Previously provided timely discovery, including notes by Detective Christopher Maitland, had identified Pop and law enforcement's suspicion of his involvement. Nonetheless, Dixon contends that FBI Agent Joseph Donahue pressured Maitland to alter his notes and exaggerated evidence of Dixon's scar, all in an effort to make the Government's case seem stronger than it was. At the same time, he argues that authorities failed to take basic steps to investigate Pop. He maintains that in reaching its verdict, the jury disregarded this evidence of a flawed investigation, entitling him to a new trial.

While we agreed with Dixon that Gallagher's notes were exculpatory and ordered the Government to produce them, that late disclosure is not a basis for a new trial. To prevail on a Rule 33 motion based on a Brady violation, the first thing a defendant must show is that evidence was, in fact, "suppressed." United States v. Durante, 689 F. App'x 692, 694 (3d Cir. 2017) (quoting United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005)). However, "there is '[n]o denial of due process . . . if Brady material is disclosed to [the defendant] in time for its effective use at trial.'" United States v. John, 391 F. Supp. 3d 458, 464 (E.D. Pa. 2019) (alterations in original) (quoting United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983)); see also Maynard v. Gov't of Virgin Islands, 392 F. App'x 105, 112 (3d Cir. 2010) (citation omitted). Even disclosure during trial itself does not violate Brady so long as the defendant is still able to make effective use of the evidence. See John, 391 F. Supp. 3d at 464 (quoting United States v. Johnson, 816 F.2d 918, 924 (3d Cir. 1987)).

Here, Defendants received the notes several days before trial. The Court offered Dixon a continuance if more time was needed to investigate. Dixon declined. His counsel utilized the

5

notes skillfully and extensively at trial and obtained a requested jury instruction regarding the late disclosure.[1] Moreover, any prejudice was blunted by the timely disclosure of the other notes implicating Pop, which put Defendants on notice of him as an alternate suspect well before trial. Thus, the notes were not truly suppressed, and Dixon identifies no lingering prejudice that resulted from their late disclosure and could warrant a new trial.

We also cannot conclude that the verdict was against the weight of the evidence with respect to Pop and the underlying investigation. The probative value of Gallagher's notes, both substantively and as evidence of a flawed investigation, was limited because in both the videorecorded investigative statement they were based on and at trial, P.A. unambiguously stated that Pop was on the phone and not in the car with Byrd. Aside from the notes, there is scant evidence that Pop was the driver as compared to Dixon. Nonetheless, authorities did investigate Pop, attempting to identify a phone number associated with him and obtaining recordings of his prison calls. And while the focus was unquestionably on Dixon as the investigation proceeded, there was no indication that this was a result of bias, rather than simply where the evidence led. Finally, Dixon mischaracterizes the testimony regarding Donahue's communications with Maitland about the notes implicating Pop. Both Donahue and Maitland testified that Donahue merely asked about the discrepancy between the notes and P.A.'s recorded statements, and did not

---

[1] Prior to Detective Gallagher's testimony regarding the notes, the Court instructed the jury–
You soon will see the October 21, 2022 handwritten notes taken by Detective Andy Gallagher during an interview with [P.A.]. These notes were provided pursuant to a Court Order on Friday, May 30, 2025 in the late afternoon. This disclosure was untimely. You may use your own common sense and life experience to make what, if any, inference you wish from the fact that these notes were not provided until last Friday.
Dixon's counsel persuasively used this instruction during his closing argument.

pressure Maitland to alter or disavow the notes. We perceive no miscarriage of justice that would justify a new trial based on this evidence.

Finally, Dixon attempts to conflate this argument with his perspective that "pro-law enforcement jurors" failed to fairly evaluate the evidence. (Dixon Mot. at 6.) Initially, we note that Dixon failed to raise, and therefore preserve, any objection on this basis at any point during voir dire or trial. Regardless, his only ground for this claim is that several prospective jurors indicated during initial voir dire questioning that they would be more likely to believe a witness who was a law enforcement officer. Each of these panelists was subject to additional questioning by the Court. Each of them stated that they could follow the Court's instructions to weigh the testimony of law enforcement officers just as they would that of any other witness and did not believe there was any reason they could not decide the case fairly in accordance with the law. Courts routinely rely on such representations. See United States v. Meehan, 741 F. App'x 864, 871-72 (3d Cir. 2018) ("[A] juror is deemed impartial so long as he 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961))). Dixon offers no evidence that any juror acted improperly, and his mere speculation that jurors improperly disregarded evidence does not entitle him to a new trial. See Noel, 905 F.3d at 275 ("A district court does not abuse its discretion in denying a motion for a new trial without a hearing where the defendant 'offers nothing more than speculation' of juror misconduct." (quotation and citation omitted)).

C. Inconsistent Verdict

Finally, Dixon argues that a new trial must be granted because the split verdict against him is inconsistent with the evidence and with the parties' theories of the case. As noted, Dixon was

7

found guilty of carjacking and use of a firearm during a crime of violence (Counts 2 and 3) but not guilty of attempted possession with intent to distribute cocaine (Count 1). To find Dixon guilty of Count 1 on an aiding and abetting theory, the Government needed to prove beyond a reasonable doubt that: (1) Byrd attempted to possess the cocaine with intent to distribute it, and (2) Dixon knew of Byrd's attempted possession and acted with intent to facilitate it. See Stevens, 70 F.4th at 661 (quotation omitted). Since Byrd was found guilty of Count 1, it stands to reason that Dixon's not-guilty verdict hinged on the second element, his knowledge of the offense and actions to facilitate it. Dixon emphasizes that the Government attempted to prove this element with evidence that Dixon communicated with Byrd in the context of a test package sent before the cocaine; texts Dixon sent following the loss of the cocaine about holding off on "the block"; and Byrd's text to only Dixon with his location sent just before the carjacking, which showed their close relationship. Dixon, meanwhile, argued at trial that he had no involvement in the crime, and specifically did not claim that he was present yet unaware of the cocaine. Because the verdict does not fully align with either of these theories, Dixon reasons that the jury must have compromised their oaths to reach unanimity, meriting a new trial.

We cannot conclude that a new trial is warranted based on the split verdict. The jury was not required to conform its verdict to either the Government's view of the case or Dixon's. Indeed, it is unsurprising that a split verdict would not align fully with either side's theory of the case, since at trial, the Government generally seeks to prove defendants guilty on all counts, while defendants typically proclaim their complete innocence. The jury was tasked with deciding whether the Government proved each element of each charge beyond a reasonable doubt. Thus, to find Dixon not guilty on Count 1, the jury was not required to accept Dixon's theory of his innocence, but merely to conclude that the Government had not met its burden.

Moreover, there is no inconsistency in the conclusions the jury reached. The jury heard evidence that Byrd was making arrangements to obtain the cocaine well before the shipment, but there was relatively little evidence of Dixon's involvement during that preliminary phase, and no express discussion of drugs between the two. In contrast, the jury heard evidence that Dixon was active in all phases of the carjacking—sitting in the driver's seat while Byrd displayed a gun to P.A., tailing the victim's truck across the city, pulling in front of the truck to block its escape, and continuing to assist after Byrd drove the driver off at gunpoint. It was therefore neither illogical nor against the weight of the evidence to conclude that Dixon aided and abetted the carjacking and use of a firearm, but not the drug offense. And, as the verdict was consistent, it lends no support to Dixon's otherwise unfounded claim that the jury compromised its oath to reach unanimity. Notably, the jury was polled at the end of trial, with each juror indicating that they agreed with the verdict. Nothing about the split verdict shocks our conscience or persuades us that a new trial is warranted.

### III. CONCLUSION

For the foregoing reasons, we conclude that Dixon has failed to meet his burden of proving that this is one of the "exceptional cases" where a new trial is warranted under Rule 33. Silveus, 542 F.3d at 1005 (quotation omitted). Accordingly, the Motion is denied. An appropriate Order will follow.

Dated: September 4, 2025                                       BY THE COURT:

                                                               _____
                                                               GAIL A. WEILHEIMER, J.